STATE of Alaska, Petitioner,

v.

Donald L. BUMPUS, Respondent.

No. S–3463.

Supreme Court of Alaska.

Nov. 8, 1991.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for petitioner.

Glen Mark and Teri L. Powers, Law Offices of Glen Mark, Anchorage, for respondent.

Suzanne Weller, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for amicus curiae, Public Defender Agency.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

After pleading no contest, Donald L. Bumpus was convicted of two counts of first degree burglary, a class B felony. A divided court of appeals concluded that Bumpus' resulting sentence was excessive and his case was remanded with instructions setting an upper limit for any new sentence. *Bumpus v. State*, 776 P.2d 329 (Alaska App.1989). The state petitioned for hearing from the decision of the court of appeals, and the petition was granted.

Having now examined the case on its merits, we affirm in part and reverse in part.

I

A

Bumpus' convictions [1] arose from his participation in a burglary ring, which was responsible for about fifty burglaries in the Matanuska/Susitna (Mat/Su) Valley and Fairbanks areas between May and September of 1987. Bumpus apparently joined the group in July 1987, shortly after his release from prison.

Bumpus was arrested in Anchorage on October 8, 1987. He eventually acknowledged his participation in the burglary ring and indicated that he used his share of the proceeds to pay living expenses and support his drug habit, which consisted of daily injections of either cocaine or heroin. The record also indicates that Bumpus provided some assistance to authorities in recovering some of the stolen property.

At the time of the offenses, Bumpus was twenty-nine years old. He first came to Alaska as a member of the United States Army. During his eighteen months in the military, Bumpus was disciplined twice for possession of marijuana, resulting in a reduction in rank, forfeiture of pay, and ineligibility to reenlist. He also served four days in jail for shoplifting. Since his August 1977 discharge from the Army, Bumpus has amassed an extensive criminal record. Five days after his discharge, he was arrested and subsequently convicted of burglary not in a dwelling, for which he served 180 days and received three years probation. Shortly after his release in early 1978, Bumpus was charged with two counts of receiving and concealing stolen property. His conviction on these charges resulted in revocation of his probation for the earlier burglary; he was consequently imprisoned until 1981.

From his release in 1981 through mid-1984, Bumpus avoided further arrest, al-

---

1. The sentence being reviewed here was for two burglaries in the Mat/Su Valley area. On September 6, 1987, Bumpus and three others entered the Willow cabin of Gary Olsen. Six days later, on September 12, the same group entered the Big Lake cabin of Bill Scholten. During these forays, the ring members stole property worth more than $9000, including video cassette recorders, cameras, paintings, jewelry, and weapons.

though he has admitted that during that period he supported his cocaine habit by dealing marijuana. In April 1984, Bumpus was arrested and convicted of shoplifting, for which he received a suspended sentence. On August 29, 1984, he was arrested along with another man in the act of burglarizing a gas station. Upon conviction for burglary in the second degree, Bumpus was sentenced to the presumptive term of three years. This prison term ended in July 1987, shortly before he joined the burglary ring involved in the crimes leading to the present sentence appeal.

### B

On the charges arising out of the burglaries committed by the ring in the Fairbanks area, Bumpus pled no contest to one count of burglary in the first degree, AS 11.46.-300, one count of theft by receiving, AS 11.46.130, and three counts of burglary in the second degree, AS 11.46.310. Superior Court Judge Jay Hodges sentenced Bumpus to a composite term of nine years' imprisonment for these crimes. Judge Hodges' sentence has not been directly appealed.

For the Mat/Su Valley crimes, Bumpus separately pled no contest in Palmer to two counts of burglary in the first degree. He appeared for sentencing on these charges before Superior Court Judge J. Justin Ripley, after he had been sentenced in Fairbanks.

Before Judge Ripley, Bumpus' prior felony convictions made him subject to presumptive terms of six years for each count. At the sentencing hearing, the prosecutor asked Judge Ripley to impose a sentence which, when aggregated with the Fairbanks sentence, would result in a sentence of fifteen to twenty years.

Judge Ripley found three aggravating factors.[2] He also found Bumpus to be a worst class offender and, by virtue of his long history of recidivism, a dangerous offender. After consideration of the sentencing factors approved by this court,[3] Judge Ripley concluded that Bumpus deserved "a massively long sentence." Thus, he enhanced the presumptive sentences on both counts to seven years, and ordered that the terms be served consecutive to one another, and consecutive to the Fairbanks term. The composite term resulting from Bumpus' involvement in the burglary ring was, therefore, twenty-three years. Judge Ripley also specified that Bumpus would not be eligible for parole.

### C

The court of appeals held that Judge Ripley correctly characterized Bumpus as both a worst offender and a dangerous offender, and agreed with Judge Ripley's conclusion that a "massively long sentence" was appropriate. *Bumpus v. State*, 776 P.2d at 333. It further held that Judge Ripley's enhancement of the presumptive terms to seven years for each count was warranted by the circumstances. *Id.* With Judge Singleton dissenting, however, the majority concluded that Judge Ripley was

**2.** Bumpus was a member of an organized group of five or more persons whose offenses were committed to further the group's criminal objectives, AS 12.55.155(c)(14); Bumpus had three prior felony convictions, AS 12.55.155(c)(15); and Bumpus had a history of repeated instances of criminal misconduct similar to the offenses for which he was being sentenced, AS 12.55.-155(c)(21).

**3.** The goals of sentencing were first summarized by this court in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). The legislature subsequently codified the "*Chaney* factors," using the following language:

In imposing sentence, the court shall consider
(1) the seriousness of the defendant's present offense in relation to other offenses;
(2) the prior criminal history of the defendant and the likelihood of rehabilitation;
(3) the need to confine the defendant to prevent further harm to the public;
(4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;
(5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct; and
(6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms.
AS 12.55.005.

clearly mistaken in assessing a composite term of twenty-three years. *Id.* at 338.

As discussed more fully below, the appellate court expressed concern that the resulting sentence was merely "the somewhat fortuitous result of adding together the terms that the superior court deemed to be individually appropriate for Bumpus' separate crimes." *Id.* at 334. The court noted that Judge Ripley made no express finding that twenty-three years was necessary to protect the public from Bumpus, and stated that the record did not "plainly establish" such a necessity. *Id.* at 335. The court further determined that Judge Ripley placed undue emphasis on deterrence and community condemnation, sentencing goals that, in the court's opinion, did not justify such a harsh sentence. *Id.* Finally, the court concluded that the sentence was excessive when compared to those reported for other criminals under relatively similar circumstances, and when compared to the sentence received by one of Bumpus's co-conspirators. *Id.* at 336–38.

## II

■ This case, which involves a serious recidivist convicted of multiple offenses with several aggravating factors, presents a situation where the legislative preference for consecutive sentences collides with the goal of sentence uniformity. Bumpus' twenty-three year sentence is well within the letter of the law,[4] yet apparently unprecedented for a burglar in this state. The court of appeals found numerous shortcomings in the trial court's sentence and concluded that it was "clearly mistaken." *See McClain v. State,* 519 P.2d 811, 813 (Alaska 1974) (standard of review in sentence appeals determined to be whether trial court "clearly mistaken").

---

4. Each of the two counts for which Bumpus was sentenced by Judge Ripley carried a maximum sentence of ten years. AS 12.55.125(d). The law allows the sentencing judge to "increase the presumptive term up to the maximum term of imprisonment for factors in aggravation." AS

## A

In its opinion, the court of appeals stated:

> [T]he [superior] court did not even refer to the aggregate length of the sentences it imposed. From the record, it would appear that the court had no specific reason to select a term totaling twenty-three years. The composite term seems instead to reflect the somewhat fortuitous result of adding together the terms that the superior court deemed to be individually appropriate for Bumpus' separate crimes.

*Bumpus,* 776 P.2d at 334. Although consecutive sentences are authorized by statute, the court continued, it is improper to mechanically string together individual sentences. 776 P.2d at 334 (citing *State v. Andrews,* 707 P.2d 900, 909–10 (Alaska App.1985), *aff'd on other grounds,* 723 P.2d 85 (Alaska 1986)). A proper sentence, the court concluded, must take into account the aggregate sentence imposed and consider its appropriateness in light of the circumstances. *Id.*

The appellate court's characterization of Judge Ripley's sentencing is rather unfair. Although he never verbalized the sum total of the sentence, the sentencing transcript makes it abundantly clear that he had it in mind throughout. Before the sentence was imposed, there was a protracted discussion of the options available, including consecutive sentencing, concurrent sentencing, and suspended sentencing. The discussion included explicit references to the Fairbanks sentence already imposed, and the aggregate effect of any action Judge Ripley might choose to take. Thus, the record does not seem to support the view that twenty-three years was merely a fortuitous result, unappreciated by the sentencing judge.

---

12.55.155(a)(2); *State v. Wentz,* 805 P.2d 962 (Alaska 1991). Assessing the maximum for both counts and making the sentences consecutive to one another, and to the Fairbanks sentence, would have resulted in a term of 30 years.

## B

The court of appeals noted that Judge Ripley "placed great reliance on the sentencing goals of deterrence, community condemnation, and isolation." *Id.* at 335. Citing its own decisions and this court's decision in *Pears v. State,* 698 P.2d 1198 (Alaska 1985), the court of appeals asserted that "the sentencing goals of rehabilitation, deterrence, and reaffirmation of societal norms will almost invariably be satisfied by imposition of a sentence of ten years or less." *Id.* Concerning deterrence and community condemnation, the court concluded that those goals could never support imposition of a twenty-three year aggregate term. *Id.*

The appellate court's substantive conclusion is no longer valid in the wake of this court's decision in *State v. Wentz,* 805 P.2d 962 (Alaska 1991), where we stated that dicta in *Pears* purporting to limit the circumstances under which sentences may exceed ten years could not be applied beyond the particular facts of that case. *Id.* at 966 n. 5.[5]

■ *Wentz* established that it is no longer appropriate for courts to rigidly define the length of sentence that can be justified by any particular criterion, provided that the sentence is ultimately within the range allowed by the legislature.

## C

The court of appeals next faults Judge Ripley for not expressly finding that isolation of Bumpus for twenty-three years is necessary to protect the public—that is, that a lesser sentence would not serve to deter or rehabilitate him. *Bumpus,* 776 P.2d at 335. Citing our opinion in *Neal v. State,* 628 P.2d 19, 21 (Alaska 1981), the court notes that failure to make an express finding is excusable if the record "unequivocally establishes" the need for isolation. 776 P.2d at 335. The court concludes that in Bumpus' case the record does not support the inference that twenty-three years of isolation is necessary. *Id.* at 336.

In support of its own reading of the record, the court of appeals emphasized a number of factors. First, the court noted that the sentencing reports contained little information about past efforts to deal with Bumpus' drug problems, despite the fact that his criminal behavior was linked to his longstanding problem with drug abuse. *Id.* The court also pointed out the absence of any psychiatric evaluation or testing. *Id.* (citing *DeGross v. State,* 768 P.2d 134, 141 (Alaska App.1989) (citing cases expressing the desirability of obtaining a psychiatric evaluation before imposing an unusually lengthy term of incarceration)).

Turning to Bumpus' criminal history, the court of appeals concluded that "the record strongly suggests that Bumpus may be amenable to rehabilitation." 776 P.2d at 336. To support this conclusion, the court asserted that Bumpus avoided entanglement with the authorities for the six years between a 1978 conviction for concealing stolen property and a 1984 conviction for burglary.[6] The court also asserted that Bumpus has been subjected to only one significant term of imprisonment, the three years from 1984 to 1987.[7] Finally, the court stressed that his previous convictions were only for class C felonies and, al-

---

5. The public defender, as *amicus curiae,* also invokes the appellate court's requirement that sentences which exceed the maximum term for the most serious offense—here, ten years—must be based on the need to isolate the defendant for the entire sentence. *Contreras v. State,* 767 P.2d 1169, 1174 (Alaska App.1989). The vitality of this "rule" is also open to question after *Wentz,* especially in view of the court's reliance on *Pears. See* 767 P.2d at 1174 (citing *Pears,* 698 P.2d at 1204–05 & n. 15).

6. Both the public defender and the state agree that the court of appeals misread the record in this regard. The public defender asserts that,

although Bumpus was convicted of concealing stolen property in February 1978 and sentenced to three years, he served only about a year, beginning in February 1980, when his probation on an earlier burglary conviction was revoked. The record is somewhat ambiguous, but the state's reading makes more sense: Bumpus was in jail from 1978 to 1981, during which time his earlier probation was revoked. The record does support the view that Bumpus avoided incarceration between 1981 and 1984.

7. This assertion is erroneous for the reasons noted in the preceding footnote.

though his current convictions are more serious, that he was only a follower in the burglary ring and not involved in all of its activities even after he joined. *Id.*

On appeal, the state argues as an initial matter that Judge Ripley did find that Bumpus needed to be isolated for the entire twenty-three years. Specifically, the state points to the judge's statement to Bumpus that the sentence he was about to impose was necessary because of "the need to isolate you until you get yourself better." The state's contention is that this statement, especially considered in the context all of Judge Ripley's remarks, indicates that the judge took into account the need for isolation as well as the prospects for rehabilitation.

The state then recites the details of Bumpus' criminal history, emphasizing the generally brief period between punishment for one offense and commission of another. Other than the three year period from 1981 to 1984, the length of time between Bumpus' release from prior incarceration and involvement in subsequent criminal activity was often measured in terms of days and weeks. This pattern extends back through 1977, when Bumpus, then nineteen, was arrested for shoplifting. Bumpus' participation in the burglary ring began within days of his release from three years in prison for burglary.

The state also argues that the record clearly demonstrates that Bumpus is not motivated to deal with his substance abuse problem. It stresses that although his drug habits have cost him military rank, money and his liberty, Bumpus has only been drug-free for a brief period following his release from prison in 1981. In addition to resuming drug use after that period, the state notes that Bumpus intensified his dependency by moving from marijuana to daily injections of heroin and cocaine. Finally, the state argues that if the court

of appeals considered the twenty-three year sentence excessive, it should have remanded the case to Judge Ripley for further consideration.

While we agree with the appellate court's determination that Judge Ripley's remarks fall short of an explicit finding that isolation is necessary for twenty-three years, we find it difficult to reconcile the appellate court's analysis with its ultimate disposition of the case. After making its comparisons, the court concludes that twenty-three years is clearly mistaken. *Bumpus*, 776 P.2d at 338. Then, without further explanation, the court directs the trial judge to impose a new sentence that results in an aggregate not exceeding twenty years with five years suspended. *Id.*

The court's abrupt choice of a fifteen year term is, on its face, not moored to any principle. One implication might be that fifteen years is the most any burglar not convicted of other crimes should receive in this state, but nothing in the applicable statutes, the prior case law, or the appellate court's reasoning explains why fifteen years should be the upper limit.

In *Shagloak v. State*, 582 P.2d 1034, 1039–40 (Alaska 1978), a case involving an offender arguably less worthy of condemnation than Bumpus, we held that a fifteen year sentence for a single burglary was not excessive.[8] This certainly suggests that, for purposes of appellate review, the "range of reasonableness" in Bumpus' case extends past the fifteen year mark. *See McClain*, 519 P.2d at 813 ("clearly mistaken test implies a permissible range of reasonable sentences").

The fifteen year sentence is similarly at odds with the appellate court's comparison of Bumpus' sentence to that of David Heacock, the leader of the burglary ring. Heacock was sentenced to a total term of twen-

---

**8.** Before the convictions in question, Shagloak's criminal background was very similar to that of Bumpus. However, the sentences imposed in each case were based on very different criminal practices. Shagloak's fifteen year sentence came from one incident of unarmed burglary of an unlocked, occupied dwelling; he took a ring, some money and a purse, and was apprehended almost immediately. *Shagloak*, 582 P.2d at 1038. Bumpus' current sentence, however, followed his participation in an organized crime spree lasting several months, which involved numerous victims and the theft of property worth thousands of dollars.

ty years, with ten years suspended.[9] *Heacock v. State*, 762 P.2d 503 (Alaska App. 1988). The appellate court concluded that Bumpus did not deserve "a sentence involving significantly more than twice the unsuspended incarceration that Heacock received," but then authorized the superior court, on remand, to impose a sentence *fifty percent longer* than the unsuspended portion of the sentence given Heacock. *Bumpus*, 776 P.2d at 337.

We also note that Bumpus helped the police apprehend his co-conspirators. This mitigating factor is important, because the practice of rewarding criminals who betray their confederates undermines the the existence of all criminal conspiracies. Yet, the presence of this factor had no apparent effect on the appellate court's reasoning; at least, it is not mentioned in the court's opinion. Therefore, we conclude that the court of appeals' order mandating a sentence no longer than fifteen years fails to properly encompass the permissible range of reasonable sentences.

## III

■ The court of appeals correctly identified several shortcomings in Judge Ripley's assessment of a twenty-three year sentence: Judge Ripley did not address the significance attached to the aggravating factors that he found; he did not make an explicit finding that the twenty-three year sentence was necessary to protect the public; he sentenced Bumpus to an unusually lengthy sentence without any psychiatric testing or psychological evaluation;[10] and, finally, Judge Ripley sentenced Bumpus to the longest sentence ever received by a burglar in this state, with virtually no explanation, nor even an acknowledgement that the sentence was unprecedented.

Based on these shortcomings, the court of appeals had considerable basis for concluding, as it did, that the record before it did not support the sentence imposed by Judge Ripley. Its order that the sentence on remand not exceed fifteen years to serve, however, is unjustified by the terms of the its own analysis, which fails to indicate in what way the aggravating factors justified fifteen years, but no more.

After concluding that a comparison with other cases indicated twenty-three years to be excessive, the court made no effort to explain why any sentence over fifteen years would also be excessive. Apart from its statement that "Bumpus' more extensive criminal history justifies a degree of disparity," *Bumpus*, 776 P.2d at 337, the court failed to explain the disparity between his sentence and that of David Heacock.

In *DeGross v. State*, 768 P.2d 134 (Alaska App.1989), the trial judge assessed consecutive sentences totaling fifty years, without specifying the importance of the various aggravating factors and without benefit of any psychological evaluation. *Id.* at 137, 141. The judge made no attempt to compare DeGross' case to that of similarly situated defendants. *Id.* at 141. Like Bumpus, DeGross had a substance abuse problem that apparently had not been meaningfully treated. *Id.* The court of appeals, in that case, concluded that "the lack of adequate findings [makes it] premature for us to determine, at this juncture, whether DeGross' fifty-year term is excessive." *Id.* at 138.

The court of appeals seemed skeptical in *DeGross* that fifty years was an appropriate sentence; we are skeptical here that Bumpus deserves twenty-three years. But the shortcomings the court of appeals has identified here are similar to, and should

9. Although Heacock had only one previous felony conviction, the appellate court stated that his prior conviction was "for a more serious offense than any of Bumpus' prior cases and involved particularly aggravated circumstances." *Bumpus*, 776 P.2d at 337. The court further observed that, in the case before it, Heacock was convicted on twenty counts, that he was on probation when he committed these offenses, and that he had been a leader of the burglary ring. The court characterized Bumpus, on the other hand, as "a follower, ... [whose] participation appears to have been more limited, both in duration and scope." *Id.*

10. In contrast, the presentence report on Shagloak included six mental evaluations. *Shagloak*, 582 P.2d at 1040 n. 15.

have the same effect as, the shortcomings in *DeGross*. A reviewing court cannot determine the appropriateness of a sentence where the sentencing court has failed to make adequate findings or, in the case of psychological evaluations, has not obtained necessary information.

In adopting the "clearly mistaken" test, we noted that "[a]nalytically, the clearly mistaken test implies a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify." *McClain*, 519 P.2d at 813. Although "permissible range of reasonable sentences" has never been precisely defined, it is obviously a function in any particular case of such consideration as the presence of aggravating factors, the psychological make-up of the defendant, the need for isolation, and the sentences imposed in comparable cases—in short, the very determinations that are not present in this case. Without articulated findings concerning the factors that determine the range of reasonable sentences, a sentence of fifteen years is as arbitrary and unsupportable as a sentence of twenty-three years. *See Wentz*, 805 P.2d at 967 n. 6 ("It is generally accepted that an appellate court is effective only when it decides cases based on the factual record before it and only after the record in that case has been completely developed." Quoting DiPietro, *The Development of Appellate Sentencing Law in Alaska*, 7 Alaska L.Rev. 265, 296 (1990)).[11]

The decision of the court of appeals vacating the superior court's sentence and remanding for resentencing is AFFIRMED. The instructions given by the court of appeals to the superior court, directing the latter to impose sentences resulting in an aggregate term of incarceration not exceeding twenty years with five years suspended, are REVERSED and ordered VACATED.

MATTHEWS, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.

I agree with the opinion of the court of appeals, and thus would either dismiss the petition in this case as improvidently granted, or affirm.

The decision of the court of appeals reaches two conclusions: first, the aggregate sentence of 23 years without possibility of parole is excessive; second, on resentencing, an aggregate sentence of not more than 15 years should be imposed. Today's majority opinion does not seem to disagree with the court of appeals' conclusion that the 23–year sentence is excessive.[1] It does, however, disagree with the court of appeals' directive that Bumpus' sentence should not exceed 15 years.

If I understand the majority's reasoning correctly, it reaches this conclusion for two reasons, neither of which indicates that a 15–year sentence on remand would necessarily be inappropriate. The first is because, in the majority's view, the court of appeals has not adequately articulated its reasons for settling on 15 years, nor has it explained "why any sentence over fifteen years would also be excessive." Maj. Op. 304. Second, the majority believes that no sentence should have been passed in this case without a psychological evaluation of Bumpus, and that meaningful sentence review without such an evaluation is impossible.

The majority's point concerning a psychological evaluation is reasonably arguable. At worst, psychological testing may cause needless delay and expense; at best it may bring out new information which is relevant in sentencing Bumpus. I would not reverse and remand for this reason, how-

---

**11.** Judge Ripley restricted Bumpus' eligibility for parole and the court of appeals disapproved this restriction. Neither court provided any discussion. If the sentencing court on remand again restricts parole eligibility, it "should articulate on the record its reasons for doing so" in order to allow appropriate review. *Jackson v. State*, 616 P.2d 23, 25 (Alaska 1980).

**1.** "Based on these shortcomings, the court of appeals had considerable basis for concluding, as it did, that the record before it did not support the sentence imposed by Judge Ripley." Maj.Op. 304. "[W]e are skeptical here that Bumpus deserves twenty-three years." Maj.Op. 304.

ever, because at no point in these proceedings has either party requested a psychological evaluation, nor is there anything in the record which suggests a need for an evaluation.

The majority's point that the court of appeals did not adequately explain its reasons for concluding that Bumpus' sentence should not exceed 15 years is not reasonable, in my opinion. The methodology used by the court of appeals in arriving at the 15–year maximum was to compare similar, although inevitably not identical, cases. The court found *Good v. State*, 590 P.2d 420 (Alaska 1979), and *Price v. State*, 565 P.2d 858 (Alaska 1977) (both 20–year sentences for significantly more serious conduct), to set an upper limit, while *Adams v. State*, 521 P.2d 516 (Alaska 1974) (11 years), *Smothers v. State*, 579 P.2d 1062 (Alaska 1978) (12 years), and *Shagloak v. State*, 582 P.2d 1034 (Alaska 1978) (15 years), suggested an appropriate range. The court also considered the 10–year sentence of Heacock, a member of the same burglary gang as Bumpus, finding Heacock's case to be in some, but not all respects, a more aggravated case than Bumpus'. 776 P.2d at 337. The court decided based on the sentences in these and a number of other burglary cases where lesser but significant sentences were given, *id.* at 338 n. 2, that a 15–year sentence for Bumpus was the maximum which would be appropriate.[2]

Before the court of appeals began to function in 1980, it was the task of this court to review sentences for excessiveness. There are numerous cases where we found a sentence to be excessive and imposed a maximum sentence on remand. In these cases, our explanation for the maximum we set was typically quite brief—usually no more detailed than the explanation given by the court of appeals in this case and often much less detailed. In no case did we ever explain what the majority wants the court of appeals to explain in this case, namely why any sentence over the maximum sentence on remand would be excessive.[3]

A case in which we used methodology which seems identical to that employed by the court of appeals in the present case is *Helmer v. State*, 616 P.2d 884 (Alaska 1980). Helmer was given a 30–year composite sentence for rape, assault with intent to kill, and burglary. We found the sentence to be excessive and remanded for resentencing, with a proviso that Helmer's sentence should not exceed 25 years. Our discussion involved a review of Helmer's history and a comparison of his crime to other cases. *Id.* at 886 & n. 6.

It is apparent that the majority in today's opinion is demanding a degree of articulation beyond that which is reflected in most

---

**2.** The court might also have added that the prosecutor in Bumpus' case recommended an aggregate sentence in the range of 10 to 15 years with 15 years being "just about right."

**3.** An example is *Preston v. State*, 615 P.2d 594 (Alaska 1980). Preston was sentenced to five years for burglary in a dwelling, her second felony. We concluded that she should not receive more than three years. While we gave reasons why the five-year sentence was excessive, we did not attempt to justify the three-year maximum or to say why, for example, a four-year sentence would also have been excessive. All we said was: "In our opinion, Preston should not be sentenced to imprisonment for more than three years...." *Id.* at 604.

An almost equally brief discussion of the maximum on remand appears in *Kanipe v. State*, 620 P.2d 678, 680 (Alaska 1980), where a four-year sentence for burglary was reduced to not more than two years. In *Fields v. State*, 629 P.2d 46, 53 (Alaska 1981), a sentence of five years for a securities fraud conviction was found excessive and reduced to three years to serve plus a fine. Our total discussion on the reason for the maximum sentence was as follows: "In our opinion, the maximum sentence should not exceed a total of six years, with three years to be suspended and the defendant to be on probation during the suspended period." Likewise, in *Huff v. State*, 598 P.2d 928, 936 (Alaska 1979), the discussion of the reason for a three-year maximum sentence on remand was very general: "We feel that a prison sentence of three years to serve is sufficient sanction under the facts of this case to properly serve the *Chaney* goals." *See also Hintz v. State*, 627 P.2d 207, 211 (Alaska 1981) (with no reasons given for the sentence on remand, a sentence of life plus 20 years was reduced to a sentence of 30 years); *Amidon v. State*, 565 P.2d 1248, 1263 n. 47 (Alaska 1977) (only discussion of maximum sentence on remand was a footnote to another case).

of the cases where we have found a sentence to be excessive and remanded for the imposition of a new sentence not to exceed a maximum term. We are, in other words, asking the court of appeals to do more than we have done.

I do not think that a higher level of articulation is practical or useful. Prior cases give one an idea of appropriate sentencing ranges. A court may say that a case fits in one range and not in another because of similarities with the former and dissimilarities with the latter. Unless one is prepared to go further and attempt to quantify various aggravating factors, that is about all that can be done. I do not read the majority's opinion as calling for a quantification of aggravating factors, indeed, it seems to condemn the practice: "it is no longer appropriate for courts to rigidly define the length of sentence that can be justified by any particular criterion...." Maj.Op. 302.

For the above reasons, I dissent.

